**Dated: September 24, 2015**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | Case No. 14-12947-JDL |
| ) | Chapter 13 |
| Asha Shellettee Jones, ) | |
| ) | |
| Debtor. ) | |

### MEMORANDUM OPINION AND ORDER DENYING MODIFICATION OF PLAN

Sometimes relatively "small" cases, raise relatively "big issues". In such cases, given the amounts in controversy, litigants often negotiate mutually agreeable resolutions. This Court has had the identical issue presented in this case arise several times within the past year only to have the parties resolve the matter and avoid a ruling by the Court. No such settlement has occurred here, leaving the Court to evaluate and resolve the parties distinctly different views on a Chapter 13 debtor's ability to modify a confirmed plan. The Court presently has before it for consideration the Debtor's Motion to Modify [Doc. 39], Auto Advantage Finance, Inc.'s Objection to Debtor's Motion to Modify [Doc. 41], Debtor's Response to Objection to Debtor's Motion to Modify [Doc. 43 ], and Auto Advantage

Finance's Sur-Reply to Debtor's Response to Objection to Debtor's Motion to Modify [Doc. 48]. This *Memorandum Opinion and Order* constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 9014.

The Court has the authority to enter a final order as this proceeding involves the allowance of a claim and the modification of a plan. See 28 U.S.C. §157 (b)(2)(B) and (L). These core proceedings are not constitutionally suspect under *Stern v. Marshall*, 564 U.S.____, 131 S.Ct. 2594 (2011).

## Background and Facts

Debtor filed for relief under Chapter 13 on July 16, 2014. On Schedule D Auto Advantage Finance, Inc. ("AAF") was listed as a secured creditor with a perfected purchase money security interest in a 2009 Ford Escape (the "Vehicle") with a value of $12,500. [Doc.1, pg. 12]. Since AAF's purchase money security interest in the Vehicle was incurred within 910 days of filing, it was not subject to §506 cramdown under the "hanging paragraph" of 11 U.S.C. §1325(a),[1] and the full amount of its secured claim was required to be paid in full in equal monthly installments. On November 4, 2014, the Court entered its *Order Confirming Plan* [Doc. 25] which provided for payment of AAF's fully secured claim under §1325(a) in the amount of $13,410, bearing interest at 9%, payable in monthly installments of $278.37.

On August 4, 2015, Debtor filed her *Motion to Modify Plan and for Trustee to Pay Attorney Fee* (the "*Motion*") under which Debtor proposed to "surrender" the Vehicle to AAF and treat any deficiency owed AAF after the sale of the Vehicle as an unsecured claim.

---

[1] Hereinafter, references to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1330, will be by section number only.

2

[Doc. 39]. Debtor's *Motion* provided for the total sum of $2498.40 to be paid to unsecured creditors pursuant to the means test, said sum to be paid in the amount of $185 per month until completion of the Plan. AAF objected to the *Motion,* contending that §1329 does not allow Debtor to modify her plan in the manner suggested, relying in part on the decision of *In re Wilcox*, 295 B.R. 155 (Bankr. W.D. Okla. 2003) (per Judge Niles Jackson).

Subsequent to the filing of Debtor's *Motion*, Debtor and the Chapter 13 Trustee entered into a *Stipulation of Debtor and Chapter 13 Trustee Regarding Motion to Modify* under which the parties stipulated that if the Court approved Debtor's *Motion* allowing surrender of the Vehicle with any deficiency balance remaining as an unsecured claim, the plan payment would be reduced to $220 beginning in September 2015 with the amount guaranteed to be paid to unsecured creditors to remain at $5,278.20. [Doc. 49]. The Stipulation further provided that if the "Court ruled in favor of the AAF with respect to the surrender issue, the required plan payment would need to be determined based upon certain facts unknown at this time".

## Discussion

### A. Does the law allow the Debtor's proposed surrender of collateral and modification of a confirmed Chapter 13 Plan?

The above question seems straightforward. Despite the seeming simplicity, a review of case law indicates that a great many issues may be implicated. These issues have generated one of the great debates in Chapter 13 law, and have created a distinct split in the decisional law.

The issue was raised in this District in *In re Wilcox,* 295 B.R. 155 (Bankr.W.D. 2003). There Judge Niles Jackson held that a Chapter 13 debtor could not modify a confirmed plan

3

to provide for surrender of a motor vehicle securing the creditor's claim in full satisfaction of its secured claim.[2] Judge Jackson recognized that logic may allow a debtor to modify a plan by surrendering a vehicle, but concluded that "accordingly, logic -- however convincing -- does not trump the letter of the law. This Court finds more *legally* convincing the reasoning of the Sixth Circuit Court of Appeals in *Nolan*, 232 F.3d 528 (6th Cir. 2000)." 295 B.R. at 157.

*In re Nolan*, relied upon by *Wilcox*, is the seminal opinion, and so far the only opinion of a Court of Appeals[3], holding:

> "A debtor cannot modify a plan under section 1329(a) by : 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim. Section 1329*(a)* only permits modification of the **amount** and **timing** of **payments**, not the total **amount** of the **claim**. This principle holds true as to the portion of a claim that is secured, where the claim is partially instead of fully secured."

232 F.3d at 534-535 (emphasis in original).

Under principles of *stare decisis*, a decision of a federal district court judge or bankruptcy court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. See e.g. *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co., Ltd.*, 240 F.3d 956 (11th Cir. 2001)); *Threadgill v. Armstrong World Industries Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991). At the same time, this

---

[2] Here, unlike in *Wilcox*, Debtor does not propose modification by surrendering the Vehicle in full satisfaction of the debt; rather, Debtor proposes surrender and payment of any resulting deficiency as an unsecured claim.

[3] The Sixth Circuit Court of Appeals, over a strong dissent, affirmed *Nolan* in *In re Adkins*, 425 F.3d 296 (6th Cir. 2004).

Court respects its prior decisions as well as decisions of Courts of Appeal and departs from them only for compelling reasons.

Changes or developments in relevant case law may constitute compelling reasons to depart from prior decisional law in this District. Here, the precise issue presented in *Wilcox*, with its virtual sole reliance upon *In re Nolan*, has gained a great deal of attention since *Wilcox's* publication in 2003. Numerous decisions have rejected its holding. In discussing *Nolan*, the authors of one leading treatise have concluded that "other courts have held to the contrary, based on a more careful and complete reading of the Code". 8 *Collier on Bankruptcy* ¶ 1329.04 [1], 1329 - 8 (Resnick & Sommer 15th Ed. 2004]. Another leading treatise states that the *Nolan* court's analysis "turns the Code on its head by not only ignoring the plain import of §1329, but also by operating to penalize the other unsecured creditors so that a secured creditor with no collateral can be paid what is essentially a premium". Lundin & Brown, *Chapter 13 Practice*. §264.1, ¶ 11 [Rev 2014].

The Sixth Circuit's decision in *Nolan*, while still relied upon by some bankruptcy courts, is not universally embraced. This Court is persuaded that an analysis of *Nolan* and a review of the case law compels a rejection of *Nolan* (and *Wilcox*) insofar as they do not allow the court some discretion in permitting modification of a post-confirmation secured claim.

This Court must look at the legal rationale of *Nolan* for finding modification proposing surrender was impermissible. The court in *Nolan* held that a bankruptcy court cannot authorize a plan modification that proposes surrender as payment of a secured claim. The court found that §1329(a), by its plain terms, permitted modification only to the amount or

5

timing of specific payments but not to alter, reduce or reclassify a previously allowed secured claim. *Id*. at 534. Thus, *Nolan* narrowly interpreted §1329(a) so as to prohibit a modification that reclassified a deficiency remaining after surrendering the vehicle from a secured to an unsecured status. The court reasoned that such modification amounts to an impermissible reduction (or disallowance) of a secured claim, an alteration of rights which is prohibited by §1329(a). *Id*. at 532-533. According to *Nolan*, §1325(a)(5)(B)(ii) "mandates that a secured claim is fixed in amount and status and must be paid in full once it is been allowed". *Id.* at 533. Thus, the court noted that: "For §1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan". *Id.* At 533, n. 8.

The reasoning of the *Nolan* court was that debtor's proposed surrender did not adequately protect the secured creditor because it allowed debtor to unnecessarily shift the burden of depreciation from herself to the secured creditor. *Id*. at 533. Several courts in subsequent cases have followed *Nolan's* reasoning and adopted its narrow interpretation of post-confirmation modification under §1329(a). See e.g. *In re Arguin*, 345 B.R. 876 (Bankr. N.D. Ill. 2006); *In re Coffman*, 271 B.R. 492 (Bankr. N.D. Tex. 2002); *In re Jackson*, 280 B.R. 703 (Bankr. S.D. Ala. 2001).

There is a contrary line of authority critical of *Nolan* which allows modification under certain circumstances pursuant to § 1329(a)(1), which provides the plan can be modified post-confirmation in order to "increase or reduce the amount of payments on claims of a particular class". First, noting that each secured creditor constitutes a "class", the reduction of a secured claim to an unsecured one by surrendering the collateral falls squarely under

6

§1329(a)(1) because the creditor's secured claim is reduced to zero and thus modification under such circumstances is permissible. Several courts agree that §1329(a)(1) contemplates this type of payment reduction by surrender. See e.g. *Bank One, NA v. Leuellen*, 322 B.R. 648, 654 (S.D. Ind. 2005); *In re Brown*, 463 B.R. 134 (Bankr. S.D. Ind. 2011); *In re Sellers*, 409 B.R. 820 (Bankr. W.D. La. 2009); *In re Davis*, 404 B.R. 183 (Bankr. S.D. Tex. 2009); *In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001); *In re Marino,* 349 B.R. 922 (Bankr. S.D. Fla. 2006); *In re Boykin*, 428 B.R. 662 (Bankr. D. S.C. 2009); *In re Palmer*, 419 B.R. 162 (Bankr. N.D. N.Y.2009) (modification of §1329 not allowing the claim may be reconsidered "for cause" under §502(j)).

Second, §1329(b)(1) states that several Bankruptcy Code provisions that govern an original plan also apply to post-confirmation modifications under §1329(a). These sections include, but are not limited to, §1322(b) and the requirements of §1325(a). An examination of the relevant portions of these provisions shows that §1329(a) permits post-confirmation modification allowing surrender of collateral in satisfaction of a secured claim. Section 1322(b)(8), which applies without qualification to modifications under §1329(a), states that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor". This provision of the Code plainly and unequivocally contemplates that surrender of collateral is a form of payment. Section 1325(a)(5)(C), which also applies by virtue of §1329(b)(1), clearly states that a debtor may choose to surrender property securing a claim. "Thus, in the matter before the Court the proposed modifications do not run afoul of any of the strictures mandated by §§ 1322, 1325 and 1329 of the Bankruptcy Code". *In re Mellors*, 372 B.R. 763, (Bankr. W.D. Pa. 2007).

One other point need be addressed. *Nolan* and *Wilcox* were concerned about the fairness of a creditor receiving a substantially depreciated asset from the debtor who could use a vehicle to "ride hard and put up wet" when the debtor was finished. AAF makes a similar argument here. Modifications, however, are subject to the "good faith" requirements of §1325(a)(3), which enables a court to protect against abusive manipulation of the Code or abusive treatment of creditors. Additionally, a creditor's concern over receiving a substantially depreciated asset through a post-confirmation surrender can be safeguarded by the creditor's ability to object to confirmation unless the timing and amount of payments under §1325(a)(5)(B) in the original plan are at least equal to the rate of depreciation. *In re Townley*, 256 B.R. 697, 699-700 (Bankr. D. N.J. 2000). Since potentially abusive proposals can be dealt with by employing "good faith" standards and the timing and amount of payments in the original plan, it is unwise to hold the debtors may never modify confirmed plans by proposing collateral surrender and satisfaction of the creditor's secured claim.

The Court must also consider the unfairness to the debtor as well as to the unsecured creditors. As to the unsecured creditors, why should the court require continued payments to a secured creditor with no collateral securing its claim and thus divert funds that might otherwise go to the payment of unsecured creditors? As to the debtor, the court must weigh the unfairness of requiring her to continue to make payments which she may no longer be able to afford for a vehicle she no longer possesses with the resulting risk of the inability to consummate the plan. See *In re Hutchinson*, 449 B.R. 403 (Bankr. W.D. Mo.). As a practical matter, to adopt the holding of *Nolan* and its prodigy would likely result in a debtor dismissing the Chapter 13 or converting it to Chapter 7. Why would a debtor

8

continue to pay for "a dead horse", or more accurately a surrendered or foreclosed home or car, as if she still owned it while being forced to find substitute housing or transportation? Forcing a debtor to make such a choice is antithetical to the rehabilitation goals of a Chapter 13.

There is no controlling Tenth Circuit Court of Appeals or Bankruptcy Appellate Panel authority on the issue presented here. However, within our Circuit, other bankruptcy courts have validated a debtor's ability to make such a modification. In *In re Lane,* 374 B.R. 830 (Bankr.D. Kan. 2007), Judge Somers was presented with the issue of post-confirmation modification being sought in involving the surrender of vehicle which had been destroyed in an accident. The court stated as follows:

> "The Court therefore holds that modification of a confirmed Chapter 13 plan under the authority of §1329(a)(1) and (3) is permitted under the circumstances presented, and Creditor's allowed 910-claim will be reconsidered for cause. Debtors elected in the Chapter 13 plan to pay the full contract price for the vehicle as a condition to their keeping the collateral. Since the collateral has been destroyed, the reason for their election no longer exists and amendment of the plan's treatment of creditors is warranted.
>
> The Court concludes that the Debtor's Chapter 13 plan may be amended to provide for termination of payments on the 910-claim and for the payment of Ford Credit's deficiency as an unsecured claim."

Similarly, *In re Clay*, 2011 WL 6117850 (Bankr. D. Kan. 2011) presented the identical question of *In re Lane,* adopted its reasoning, and held that the plan could be modified to change the remaining balance due the secured creditor after the application of insurance proceeds to an unsecured deficiency claim. In adopting Judge Somers' reasoning from *In re Lane*, Judge Nugent stated as follows:

> "Judge Somers noted in *Lane* that many courts agree with *Nolan* as does Norton's bankruptcy treatise. He also noted that both Colliers and Judge Lundin have roundly criticized the decision in their treatises. Judge Lundin states that the *Nolan* court's analysis 'turns the code on its head' by not only ignoring the plain import of §1329, but also by operating to penalize the other unsecured creditors so that a secured creditor with no collateral can be paid what is essentially a premium. *Nolan* did not consider extra-plan payments as a basis for post-confirmation modification under §1329(a)(3), the provision that was plainly implicated here and in *Lane*. *Nolan* also ignores the presence in the code of §502(j) which allows for the reconsideration of an allowed claim for 'cause according to the equities of the case.' In *Lane*, the court held that the post-confirmation destruction of collateral through no fault of the debtor is cause for reconsideration of the allowed claim.
>
> The equities of this case, including the fact that the secured creditor no longer has any collateral, demand that the secured claim be allowed at zero, but that he be permitted to make an unsecured deficiency claim".

While *In re Lane* and *In re Clay* allowed modification "for cause" where the collateral had been damaged or destroyed, in *In re Knappen*, 281 B.R. 714 (Bankr. D. N.M. 2002), the court allowed plan modification where the debtor was simply unable to pay for the vehicle after plan confirmation and voluntarily surrendered it to the creditor. After reviewing the conflicting authorities the court concluded as follows:

> "Having considered the statute and the various cases and legal theories and applied them to the particular facts of this case, the Court adopts the reasoning of those that permit modification of the plan and ceasing payment of the secured claim.
>
> The language of §1329(a)(1) of the Code explicitly allows the debtor to 'reduce the amount of payments on claims of a particular class . . . .' Since each secured claim is generally treated as a separate class, e.g. *In re Anderson,* 153 BR 527, 528 (Bankr. M.D. Tenn. 1993), reducing to nothing the amount of payments on Ford's secured claim fits within the language of the statute. ... In this respect, *Nolan*, 232 F.3d at 535 ('Section

10

> 1329(a) only permits modification of the amount and timing of payments, not the total amount of the claim.') misconstrues the language and intent of the statute. See also Lawrence P. King, *Collier on Bankruptcy,* ¶ 1329.04 [1] n.3 (15th Ed. Rev.) (characterizing the holding in *Nolan* as 'erroneous').
>
> * * *
>
> Acknowledging the lack of clarity in §1329(a), cases [following *Nolan*] interpret the statute to preclude claim reconsideration. In support of that conclusion, they cite the proposition that 'a debtor's confirmed plan is *res judicata* as to [valuation in] claims adjudications.' The absolutism of those court's declarations should be hedged for at least two reasons. First, it does not take into account §502(j) which provides in part as follows:' a claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.'
>
> The express language of §1329(a) does not preclude application of §502(j), although it admittedly does not explicitly allow it either. However, §103(a) makes § 502(j) applicable to Chapter 13 cases without excepting from its application any portion of chapter 13".

See also, *In re Disney*, 386 B.R. 292 (Bankr. D. Colo. 2008) ("The Court finds it must part company with *Nolan* and *Adkins* as well as those courts which follow them. * * * On balance, the Court finds the better reasoned view recognizes the interplay of §§ 502(j) and 1329(a) to allow for recharacterization of a secured claim following foreclosure or surrender of collateral and treatment of the resulting deficiency claim in a modified plan".). *Contra*, *In re Conley, 504 B.R .661 (Bankr. D. Colo., 2014); In re Storey, 392 B.R. 266 (6th Cir. BAP 2008); In re Arguin*, 345 B.R. 876 (Bankr. N.D. Ill. 2006).

Under the weight and persuasion of the developing case law and treatise analysis, this Court concludes there is no *per se* prohibition on the suggested plan modification. This Court thus respectfully disagrees with the conclusion announced in *Nolan* and its progeny,

11

including *Wilcox*, and concludes that sufficiently compelling reasons justify departing from them.

### B. Can Debtors proposed modification be approved in this case?

Having determined that there is no *per se* prohibition against a post-petition surrender of a vehicle and recharacterization of the underlying debt securing it, the Court must proceed to determine whether it is appropriate in the present case. As stated above, the Court requires that any modification of the plan involving surrender of the collateral be proposed in good faith under §1329(b)(1). For example, the court may deny modification where a debtor's conduct has caused excessive or abusive depreciation. See e.g.*, In re Butler*, 174 B.R. 44, 48 (Bankr. M.D. N.C.1994) (finding modification to surrender vehicle not in good faith where the debtor wrecked the vehicle and had not maintained insurance as required by the loan agreement); *In re Oldin*, 2010 WL 3791486 (Bankr. D. Ore 2010) (unpublished)( vehicle "trashed").

Here, there is no allegation by AAF or the trustee that the Debtor abused the vehicle or was otherwise guilty of any inequitable conduct. Debtor in her *Motion* stated the reason for the proposed surrender and modification was "Debtor's vehicle is too expensive for Debtor to maintain". In her *Response to Objection to Debtor's Motion to Modify,* Debtor somewhat expanded the basis of seeking modification:

> "5. Debtor claims that she is unable to retain the vehicle as the vehicle was expensive, debtor does not have sufficient funds to maintain the vehicle, and does not have sufficient funds to maintain payments to the trustee for the vehicle."

In its *Sur-Reply to Debtor's Response,* AAF has not come forward with any evidence indicating that Debtor's motive in proposing the surrender and modification is other than as claimed.

In this Circuit, the "*Flygare* factors" guide the court's determination whether the modification of a plan is proposed in good faith. *Flygare v. Boulden (In re Flygare)*, 709 F.2d 1344, 1347-48 (10th Cir. 1983). Whether a modification is proposed in "good faith" is evaluated on a case-by-case basis by examining the totality of the circumstances. [Id.]; *Alexander v. Hardeman (In re Alexander)*, 363 B.R. 917, 924 (10th Cir. BAP 2007). In *Flygare*, the Tenth Circuit adopted a non-exhaustive list of eleven relevant factors to guide courts in the determination of good faith.[4] The bankruptcy court should weigh each factor according to the facts and circumstances of each case. *In re Young*, 237 B.R. 791 (10th Cir. BAP 1999).

The bankruptcy court need not restrict itself to the Flygare factors, but may consider other relevant circumstances, including any that indicate the debtor has "unfairly manipulated the Bankruptcy Code". *Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir. 1989), whether the modification is "fundamentally" fair, and whether

---

[4] These factors include (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

the debtor is trying to pay the creditors to the "reasonable limit of his ability" or is, instead, trying to "thwart them". *Leuellen*, 322 B.R. at 661.

 As stated above, there is nothing in the record to indicate that Debtor abused the Vehicle, has acted inequitably or has attempted to thwart the creditors. She claims that she simply can't afford the vehicle. However, Debtor has not introduced any proof that she no longer has the ability to make the payments required under the confirmed plan. All the Court has before it are Debtor's counsel's assertions in the *Motion* and *Response*. The Court cannot conclude that Debtor is trying to pay her creditors to the "reasonable limit" of her ability. Thus, the modification fails to meet the "good faith" requirement of § 1325(a)(3). *In re Brown*, 463 B.R. 134, 139 (Bankr. S.D. Ind.2011).

 The Tenth Circuit has not ruled that changed circumstances are a predicate for modifying a confirmed Chapter 13 plan. *In re Ramsey*, 507 B.R. 736, 741 (Bankr. D.. Kan. 2014). However, since the eleven *Flygare* factors are not exclusive, the Court may consider other relevant circumstances to determine good faith, including changed circumstances. [*Id*.]. As determined in *Lane* and *Clay*, destruction of the vehicle collateral may constitute "changed circumstances". Loss of use of the collateral is not involved in the present case. Other courts consider a change in *financial* circumstances as a major factor in the Court exercising its discretion on whether to allow modification. *Lewellen*, 322 B.R. at 656 ("... modification allows Chapter 13 debtors *who experience a dramatic change in their income*, and who act in good faith and with the bankruptcy court's approval, to surrender collateral to the secured creditor ...."); *In re Rodriguez*, 430 B.R. 694 (Bankr. M.D. Florida 2010) (debtor suffered a decrease in income and could no longer afford to maintain two vehicles);

*In re Boykin*, 428 B.R. 662 (Bankr. D. S.C. 2009) (unanticipated increase in debtor's living expenses); *In re Sellers*, 409 B.R. 820 (Bankr. W.D. La. 2009) (increased medical expenses); *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002) (surrender of vehicle needed to allow debtors to make payments sufficient to keep family home); *In re Townley*, 256 B.R. 697 (Bankr. D. N.J. 2000) (debtor-wife lost her job).

Here, Debtor's *Motion* and *Response* are silent with respect to any changes in Debtor's financial situation. The allegation that the Vehicle is too expensive and that Debtor doesn't have the ability to make the payments is not sufficient to determine whether her financial circumstances have changed since the presentation and confirmation of her original plan.  A mere change in heart, or mind, is not, in this Court's opinion, sufficient "changed circumstances" necessary for a showing of good faith required to allow modification.

## Conclusion

Based on the foregoing, Debtor's Motion to Modify is **DENIED**.

###